IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOHN P. HARTMAN,

                        Plaintiff,

        vs.

SUNBELT RENTALS, INC.,

                        Defendant.

**4:21CV3328**

**MEMORANDUM AND ORDER**

Plaintiff has moved to compel the defendant to fully respond to Interrogatories 1, and 3-9, and Requests for Production 17-28, 33 and 37. (Filing No. 33). For the reasons stated below, the motion will be granted in part and denied in part.

BACKGROUND

Plaintiff's complaint alleges that on August 19, 2020, while he was employed by Defendant, he was diagnosed with a disabling neurological disability. He claims that on August 25, 2020, less than a week after he disclosed the diagnosis to his employer, he was placed on a Performance Improvement Plan (PIP). The PIP allegedly gave Plaintiff until October 25, 2020, to meet certain sales goals, but Defendant terminated Plaintiff's employment on October 21, 2020.

Plaintiff alleges he was placed on the PIP and then fired because he was disabled. He claims Defendant engaged in disability discrimination in violation of the ADAAA and the Nebraska Fair Employment Practices Act (NFEPA) without affording Plaintiff reasonable accommodations or engaging in the interactive

process. He further claims Defendant denied his request for leave in violation of the FMLA.[1]

Rebel Blake Strohmeyer was the Director of Human Resources for the Sunbelt territory that included Plaintiff's employment location. (Filing No. 37-1, at CM/ECF p. 2). In 2018 through 2020, she was the Sunbelt Regional HR Manager for Sunbelt's general tool locations in Regions 9 and 13. Over the course of that two-year period, her area of responsibility included general tool locations within Arkansas, Oklahoma, Kansas, Missouri, Kentucky, Illinois, Wisconsin, Michigan, Ohio, Indiana, Iowa, Minnesota, North Dakota, South Dakota, and Nebraska and encompassed the following ten districts: Chicago, Chicago South, Detroit, Great Lakes, High Plains, Minnesota, Upper Midwest, West Central, Lincoln, Kansas City, Gateway, and Central Plains. (Filing No. 37-1, at CM/ECF p. 2).

Scott Rucinski was the District Manager for the High Plains District, Rucinski oversaw ten profit centers located within Nebraska, Iowa, and parts of Illinois. (Filing No. 37-2, at CM/ECF p. 1).

Plaintiff worked out of Profit Center #413 in Kearney, Nebraska. Profit Center #413 was one of ten profit centers located within Sunbelt's High Plains

---

[1]      In his initial brief in support of the motion to compel, Plaintiff includes a factual statement which frequently cites to the allegations within his complaint, characterizing those facts as undisputed. Defendant's brief takes great exception to this characterization. Then, in his reply brief, Plaintiff claims the facts in his initial brief must be considered undisputed because Defendant's response did not include evidence contradicting Plaintiff's statement of facts.

Plaintiff appears to be asking the court to apply the procedural requirements of Nebraska Civil Rule 56.1 to his pending motion to compel. This position is erroneous. Summary judgment practice requires the nonmoving party to offer evidence refuting statements of material fact in the moving party's brief, (see NECivR. 56.1), but a party responding to a motion to compel need not identify which material facts are in dispute and which are unopposed. In contrast to a motion for summary judgment, a motion to compel does not seek a ruling on the merits. When discovery motions are filed, the court must understand the parties' respective allegations to decide whether the discovery requests at issue seek relevant information and whether producing the information requested is proportional to the needs of the case. The court does not decide what, if any, material facts are undisputed.

Nebraska Civil Rule 7.1, not Rule 56.1, governs the briefing and evidentiary record applicable to Plaintiff's motion to compel. Defendant has complied with Rule 7.1.

District. Tom Remmenga, who was supervised by Rucinski, was the manager of the #413 Profit Center and Plaintiff's direct supervisor. (Filing No. 37-1, at CM/ECF p. 2). In 2020, Defendant had 25 employees within a 75-mile radius of its Kearney, Nebraska location. (Filing No. 32-2, at CM/ECF p. 13).

On Tuesday, August 25, 2020, Plaintiff was placed on a PIP that focused on three areas: 1) Daily Sales Calls; 2) Accelerate Usage; and 3) Fleet on Rent. Remmenga and Rucinski drafted the PIP which outlined the goals Plaintiff was required to meet. They forwarded it to Strohmeyer. (Filing No. 32-6, at CM/ECF p. 3; Filing No. 37-1, at CM/ECF pp. 5-9). Strohmeyer reviewed the document to ensure that the PIP, as written, conformed to Sunbelt policies and procedures. (Filing No. 37-1, at CM/ECF p. 4). Remmenga and Rucinski then explained the PIP to Plaintiff. (Filing No. 37-2, at CM/ECF p. 2).

Remmenga met with the Plaintiff again on October 19, 2020, and advised Plaintiff that Remmenga saw no measurable improvement in Plaintiff's performance. After discussing the lack of progress with Rucinski, and in consultation with Strohmeyer, Remmenga terminated Plaintiff's employment on October 21, 2020. (Filing No. 32-6, at CM/ECF p. 4). After being notified by Remmenga that Plaintiff was being fired, Strohmeyer prepared a Separation Notice for review by Remmenga and Rucinski. Strohmeyer did not decide whether to terminate Plaintiff's employment. (Filing No. 37-1, at CM/ECF pp. 4, 11-12).

## DISPUTED DISCOVERY REQUESTS

As to the discovery requests at issue, the parties raise the following seven areas of dispute:

3

1)      Whether Defendant's reference to its Rule 26 Initial Disclosures adequately responds to Plaintiff's Interrogatory requesting the names of anyone who, to Defendant's knowledge, possesses information directly related to the complaint and answer, along with a detailed description of what each such person knows. (Filing No. 32-2, at CM/ECF p. 1 (Plaintiff's Interrogatory No. 1)).

2)      Whether Defendant has adequately described the facts and non-privileged information which directly contributed to and/or supported Defendant's decision to: (a) place Plaintiff on a PIP in August 2020, and (b) terminate the Plaintiff from employment. (Filing No. 32-2, at CM/ECF p. 4 (Plaintiff's Interrogatory No. 3)).

3)      Whether Defendant has adequately responded to interrogatories requesting a description of communications between Sunbelt management personnel and between those personnel and Plaintiff as to the following specific topics:

   a) the decision to place Plaintiff on a PIP and to terminate Plaintiff, (Filing No. 32-2, at CM/ECF p. 5 (Plaintiff's Interrogatory No. 4 (b-d));

   b) Plaintiff's alleged performance deficiencies, (Filing No. 32-2, at CM/ECF p. 7 (Plaintiff's Interrogatory No. 5); and

   c) Plaintiff's medical condition(s), medical appointments, medical diagnosis, medical treatment, request for accommodation, and/or FMLA leave, (Filing No. 32-2, at CM/ECF p. 8 (Plaintiff's Interrogatory No. 6).

4)      Whether Defendant has adequately responded to written discovery requests focused on the duties, territories and customers assigned to the employee who replaced Plaintiff, along with that employee's performance in meeting Defendant's goals, his pay and bonuses, how those amounts were calculated, and any discipline he received from Defendant, (Filing No. 32-2, at CM/ECF p. 12 (Plaintiff's Interrogatory No. 9); (Filing No. 32-4, at CM/ECF p. 14 (Requests for Production 24 and 25)).

4

5)      Whether Defendant must produce the personnel files of Remmenga, Rucinski, and Strohmeyer, (Filing No. 32-4, at CM/ECF pp. 14-16 (Requests for Production 26, 27, and 28)).

6)      Whether for the time period of 2017 to 2020, as to all current or former employees of the Defendant or applicants for employment within Strohmeyer's area of HR management (Sunbelt Regions 9 and 13— encompassing 15 states; ten districts), Defendant must disclose all documentation of:

- allegations of disability discrimination, retaliation, and/or failure to provide reasonable accommodation and/or violations of the FMLA,

- and as to these allegations, all investigations undertaken, findings, and conclusions reached, and all remedial and/or disciplinary action taken or imposed, (Filing No. 32-4, at CM/ECF pp. 8-9 (Requests for Production 17 and 18)).

7)      Whether as to all of Defendant's outside sales personnel from 2017 to present within Strohmeyer's area of HR management, Plaintiff is entitled to discover:

Each employee's
- name,
- dates of employment,
- disability status,
- any request for ADA accommodation and/or FMLA leave,
- sales territory,
- performance,
- commissions and/or bonuses paid, and
- a full description of all verbal and/or written disciplinary action issued;

and as to each employee, the following documentation:

5

- the employee's personnel files and other documents directly related to his or her performance, including, but not limited to evaluations, disciplinary and/or corrective action,
- documents, maps, and other items which reflect changes in his or her sales territory,
- the employee's complete customer lists,
- all goals assigned by Defendant and the employee's performance toward that goal,
- an itemization of all commissions and bonuses paid to the employee, and an explanation of why the payment was made and how it was calculated, and
- the employee's disability status, requests for ADA accommodation, FMLA paperwork and requests for leave, Defendant's response to those requests, and if applicable, the reason the employee was terminated.[2]

((Filing No. 32-2, at CM/ECF pp. 10-11 (Plaintiff's Interrogatory Nos. 7-8), (Filing No. 32-4, at CM/ECF pp. 10-12, 19-20, Requests for Production 19-23, 37)).

Defendant timely objected to each of these requests. Plaintiff now moves to compel.

## STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, amended on December 1, 2015, limits the scope of discovery to

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

---

[2]    This final category is limited to 2018 (not 2017) to present.

6

discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Courts must examine each case individually to determine the weight and importance of the proportionality factors.

A party requesting discovery must show how the requested information is important to the issues and resolution of the case. The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992). Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case. But mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir.1972). "While the standard of relevance in the context of discovery is broader than in the context of admissibility, . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer, 981 F.2d at 380.

Sweeping discovery requests which are not tailored to obtain only information relevant or capable of leading to the discovery of information relevant to this case are overbroad. The burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court, and a "party resisting facially overbroad . . . discovery need not provide specific, detailed support" to raise and stand on its objections. Madden v. Antonov, 2014 WL 4295288, 3 (D. Neb. 2014); Carlton v. Union Pacific R. Co.,

7

2006 WL 2220977, 5 (D. Neb. 2006) (citing Contracom Commodity Trading Co. v. Seaboard, 189 F.R.D. 655, 665 (D. Kan.1999).

In this case, Plaintiff has offered compromises intended to narrow the scope of the interrogatories and document production requests at issue. The proportionality of discovery should be considered when the serving party drafts the requests, not merely when the receiving party objects. After-the-fact haggling over how to narrow discovery requests slows case progression and wastes attorney time, the parties' time and money, and court resources—the antithesis of securing a just, speedy, and inexpensive determination of the case. Fed. R. Civ. P. 1.

That said, the court will consider the parties' compromised positions in ruling on this motion to compel. The court, however, cautions counsel that going forward, written discovery must be more carefully drafted to limit sweeping requests for information, some of which is clearly irrelevant; and responses to written discovery must include full and complete answers and document production, without the overlay of numerous unreasonable objections.

ANALYSIS

A. Discovery Issues

1)    Interrogatory 1 and Defendant's Initial Disclosures

Plaintiff's Interrogatory 1 requests the names of all persons known by the defendant to possess "material" information "directly related to the complaint and answer" along with a description "in detail" of what each person knows. (Filing No. 32-2, at CM/ECF p. 1 (Plaintiff's Interrogatory No. 1)). Defendant has objected that the terms "material" and "directly related to the complaint and

answer" are vague, and the plaintiff is not entitled to a narrative of what the defendant believes each witness knows or may know. Subject to the objections, the defendant refers Plaintiff to its Rule 26 Initial Disclosures. Those disclosures have not been filed as evidence in support of or in opposition to the pending motion to compel.

Rule 26(a)(1)(A)(i) requires a party to disclose the identity of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). Unless requested by written discovery or deposition questioning, a party need not disclose the identity of persons who may have information helpful to the opposing party's case. And Rule 26 requires the opposing party to provide "the subjects" of the information known by any listed witness, not a detailed description of what each identified person may know. So, the scope of Plaintiff's Interrogatory No. 1 exceeds the scope of disclosures required under Rule 26.

The court is not convinced that the phrase "material" information related "directly to the complaint and answer" is vague. A party can ask for the identities of any persons known by the opposing party to have knowledge relevant to the allegations in the complaint and the answer. See Fed. R. Civ. P. 26(b)(1). See also, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350 (1978); 8 Fed. Prac. & Proc. Civ. § 2013 Identity of Witnesses, (3d ed.). While worded differently, that is what Plaintiff is requesting in Interrogatory No. 1.

However, Interrogatory No. 1 also requests a detailed description of what each witness knows. Providing a general or topical description of a witness' knowledge is far different from providing a detailed one. The former can be based simply on knowing who was present or included in the event,

conversation, or transaction; the latter requires explaining what that witness now remembers or knows.

A party cannot fully and reliably describe, by interrogatory, what someone else knows. Obtaining depositions (or statements from nonparty witnesses) is the best means for acquiring this information. These methods far surpass interrogatories by protecting the opposing party's work product, averting even innocent misrepresentations over what a witness can and will say at trial, and limiting objections, motions to compel, and motions for sanctions over whether information was sufficiently disclosed in the opposing party's "detailed description."

For the foregoing reasons, Plaintiff's motion to compel a further response to Interrogatory No. 1 will be granted in part. Defendant is required to identify by name, and if known, address and phone number, any person who, to Defendant's knowledge, has information relevant to the allegations within the operative Complaint and Answer. As to each such person, Defendant must disclose a general and/or topical description of what that person knows. To the extent Interrogatory No. 1 requests a detailed narrative of what a witness knows, the motion to compel a further answer to Interrogatory No. 1 will be denied.

2)    Explaining why Plaintiff was placed on a PIP and later terminated

Plaintiff's Interrogatory No. 3 asks the Defendant to "describe in detail all facts and non-privileged information which directly contributed to and/or supported Defendant's decision to: (a) place Plaintiff on a Performance Improvement Plan in August 2020, and (b) terminate the Plaintiff from employment." (Filing No. 32-2, at CM/ECF p. 4). Defendant objects to the

interrogatory, stating the phrase "directly contributed to and/or supported" its decisions is vague and unduly burdensome.

The court disagrees. Plaintiff is requesting and is entitled to receive a complete explanation of why he was placed on a PIP and why he was terminated. Defendant answered over the objection by stating:

> Defendant states that Plaintiff was placed on a Performance Improvement Plan as a result of his lack of effective daily sales calls, failure to utilize the Accelerate ("XLR8") program to log sales notes, and consistently low fleet on rent value numbers. Plaintiff was terminated because he did not show notable progress toward reaching his Performance Improvement Plan goals.

Id. The court notes that Defendant was able to provide a far more detailed explanation for its action when it was responding to the NEOC. See Filing No. 32-6. And perhaps merely referencing that document is a full and complete answer to Interrogatory No. 3. But as it currently stands, Defendant has not fully responded to Interrogatory No. 3, and it will be ordered to do so.

3)    Description of communications

Plaintiff's Interrogatories 4, 5, and 6 request a full and complete description of every communication, including verbal communications, about Defendant's decision to place Plaintiff on a PIP and to terminate Plaintiff, Plaintiff's alleged performance deficiencies, Plaintiff's medical condition(s), appointments, diagnosis, and treatment, and his requests for accommodation and/or FMLA leave. Defendant objected to these interrogatories, stating words and phrases such as "consulted", "participated", "directly related", "substantive participation", and "input" as used in these interrogatories made the requests vague and unduly burdensome. If that is so, the English language lacks the words needed to draft a sufficiently clear and specific interrogatory. Either that, or objections are currently

11

being raised so Defendant can cite to an excuse later, if needed, for failing to disclose requested information. Defendant's objections are overruled.

Defendant argues Plaintiff's motion to compel further responses to Interrogatories 4, 5, and 6 should be denied because the requests require a lengthy narrative of the detailed substance of communications, and are therefore unduly burdensome, and the information requested can be more expeditiously obtained through other discovery avenues. Defendant explains the information "Plaintiff seeks regarding the detailed substance of conversations between Sunbelt employees can be more expeditiously and thoroughly obtained through the depositions of the individuals actually involved in said conversations," (Filing No. 19), and Defendant has already offered to produce Remmenga, Rucinski, and Strohmeyer at depositions. Id.

Defendant answered Interrogatory 4(a) by stating "Tom Remmenga, Scott Rucinski, and Rebel Strohmeyer participated in the discussions regarding Plaintiff's performance, Sunbelt's decision to place Plaintiff on a PIP, and its decision to terminate Plaintiff's employment." (Filing No. 32-2, at CM/ECF p. 5). Other than referring to emails,[3] it did not state how and when each of these people participated in placing Plaintiff on a PIP or terminating his employment, (Interrogatory 4(b)); explain the communications between Sunbelt management and between Sunbelt management and Plaintiff regarding these decisions, (Interrogatory 4(c)), or identify all the documents, recordings, text messages, and emails about or leading to the PIP and termination decisions, (Interrogatory 4(d)).

Defendant also cites to only the previously produced emails as disclosing the communications regarding Plaintiff's alleged performance deficiencies, (Filing No. 32-2, at CM/ECF p. 7, (interrogatory No. 5)).

---

[3]     Plaintiff states only three or four emails have been produced. (Filing No. 42, at CM/ECF pp. 5-6).

And in response to Plaintiff's request for a description of all communications about Plaintiffs medical condition, appointments, diagnosis, and treatment, and his request for accommodation and/or FMLA leave, (Filing No. 32-2, at CM/ECF p. 8, (interrogatory No. 6)), Defendant states:

> Defendant states that beginning June 2020, Plaintiff requested and was granted time off to attend various medical appointments. In or about August 2020, Plaintiff notified his manager, Tom Remmenga, that he had been diagnosed with Multiple Sclerosis. On August 28, 2020, Plaintiff sent an e-mail to Rebel Strohmeyer, Territory Director of Human Resources, to proactively inform the Human Resources Department of his Multiple Sclerosis diagnosis should the need for leave arise in the future. On a subsequent phone call with Ms. Strohmeyer, Plaintiff indicated that he was not requesting leave at that time, and Ms. Strohmeyer informed Plaintiff that he should contact Human Resources should he want to pursue any type of leave or accommodation. Plaintiff did not make a request for an accommodation at any time during his employment with Sunbelt. Defendant identifies emails produced in response to Plaintiffs First Request for Production.

(Filing No. 32-2, at CM/ECF pp. 8-9).

There are more communications than those stated in Sunbelt's responses to Interrogatories 4(b-d), 5, and 6. Sunbelt's response to the NEOC proves that. Sunbelt's effort to fully respond to federal discovery should be at least equal to the effort it invested in defending itself before the NEOC. Yet, its responses to Interrogatories 4, 5, and 6 are incomplete.

As to conversations, Defendant need not attempt to provide a verbatim description of every conversation, but it must at least identify that the conversation occurred, the topic discussed, when it occurred, who was present, and generally what was stated and/or decided and by whom. As to documented communications, it must provide all responsive documentation, not merely the

13

three to four emails described in Plaintiff's brief. This would include any performance evaluations leading to the PIP, and the progress reports to be submitted to Strohmeyer every two weeks after the PIP was issued. ([Filing No. 37-1, at CM/ECF p. 2](#)).

Plaintiff could obtain some of this information by deposing Remmenga, Rucinski, and Strohmeyer, but the quality of those depositions, and the ability of Plaintiff's counsel to prepare in advance, will be less without written discovery responses. Moreover, a party is not allowed to unilaterally decide that written discovery can be ignored because depositions can and should be taken instead.

To the extent described above, Plaintiff's motion to compel full and complete responses to Interrogatories 4 (b-d), 5, and 6 will be granted.

4)    Plaintiff's replacement(s)

Plaintiff served interrogatories and document production requests for information explaining the duties, territories and customers assigned to his successor, whether that employee met the goals imposed by Defendant, the successor(s)' remuneration and how that was calculated, and any discipline he or she received from Defendant.[4]

Defendant objected on relevancy and further answered Interrogatory No. 9 by stating:

---

[4]    Defendant further objects to identifying Sunbelt's customers, explaining this information is confidential and proprietary. ([Filing No. 32-2, at CM/ECF p. 12](#)). Defendant has the burden of proving the information is exempt from discovery due to confidentiality. It has produced no evidence in support of that discovery objection. Moreover, the court has entered a protective order that should sufficiently address Defendant's confidentiality concerns for the purposes of this case. See ([Filing No. 9](#)).

[I]n or around March 3, 2022, Keith Ostrander was hired as an outside sales representative for Plaintiff's former territory. Defendant directs Plaintiff to the Outside Sales Representative job description produced in response to Plaintiff's First Request for Production for a list of duties performed by outside sales representatives.

(Filing No. 32-2, at CM/ECF p. 12). Defendant did not respond to the remaining portion of Interrogatory No. 9, and it did not produce the documents supporting a full and complete response to Interrogatory No. 9. See Requests for Production 24 and 25 (requesting Ostrander's personnel file, and maps or descriptions of his assigned territories, all assigned or suggested goals, his performance towards those goals, customer lists, sales/rentals made, evaluations, itemization of commissions and/or bonuses paid, and the method utilized to calculate each bonus and commission). (Filing No. 32-4, at CM/ECF p. 13).

Defendant argues the requested information is irrelevant because Ostrander was not hired until March 3, 2022, the territory was left uncovered for 16 months, and while Plaintiff had three years of experience working as an OSR, even as of now, Ostrander has been in the position for less than 9 months. (Filing No. 38, at CM/ECF p. 16).

While Defendant may certainly argue the information requested is irrelevant and inadmissible at trial due to the differences between Ostrander and Plaintiff, for discovery purposes, the information may be relevant to the issue of whether Plaintiff received a PIP and was terminated for insufficient performance or, in the alternative, based on his perceived disability.[5] "Information within [the]

---

[5]      If Defendant imposed the same standards on Ostrander as it did on Plaintiff, and Ostrander has met those standards, Defendant would no doubt want to use that evidence at trial, leaving Plaintiff to explain, e.g., the disparate economic climate during the pandemic made the goals impossible for Plaintiff. By corollary, if more was expected of Plaintiff than Ostrander, Defendant will have an opportunity to explain why, and ask that Ostrander's circumstances be excluded at trial as irrelevant or in violation of Rule 403. But under either scenario, the information is relevant for the purposes of discovery because depending on what is disclosed, it may ultimately be deemed relevant and admissible at trial, or lead to the discovery of relevant information. See Benner v. Saint Paul Pub. Sch., I.S.D. #625, No.

scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1)

Plaintiff is requesting Ostrander's entire personnel file, which will include information that is private and irrelevant to this case. Plaintiff also requests customer lists provided to Ostrander. As to the comparator information requested in Requests for Production 19 and 21, Plaintiff has limited the requests. The court will impose the same limitations for responding to Interrogatory No. 9 and Requests for Production 24 and 25.

Defendant shall fully respond to Interrogatory No. 9, and as to each person identified in response to that interrogatory, shall produce documentation of the employee's assigned territory; suggested areas for working outside that territory; goals, assignments, and performance towards those benchmarks; performance-based commissions and bonuses paid, and how those amounts were calculated; evaluations, verbal and written counseling, or discipline; discharge or resignation documents; and any disability reported, any disability accommodations or requested accommodations, and Defendant's response; and any FMLA requests and Defendant's response.

5)      Personnel files of Remmenga, Rucinski, and Strohmeyer

Plaintiff requests the "personnel files" of Rucinski, Remmenga, and Strohmeyer, excluding their social security numbers, and beneficiary and banking information. (Filing No. 32-4, at CM/ECF pp. 14-16 (Requests for Production 26, 27, and 28)). Defendant objects, stating:

---

017CV01568SRNKMM, 2018 WL 4846760, at *3 (D. Minn. Oct. 5, 2018) ("One side's view of the importance or meaning of information in its possession should not unilaterally control the limits of discoverability.").

16

> Defendant objects . . . on the grounds that it is overly broad, unduly burdensome, not reasonably limited in scope, irrelevant and not proportional to the needs of the case. Plaintiff fails to define "personnel file", making the Request overly broad, unduly burdensome, and harassing. Defendant also objects to the production of the entire personnel file . . . as overly broad and because it requires the disclosure of extensive personal and private information that is irrelevant to the claims and defenses at issue in this litigation. Plaintiff cannot establish that such broad discovery into the personnel file . . . is relevant to the claims and defenses at issue in this litigation. Defendant states that documents are being withheld pursuant to the aforementioned objections.

Id.

Plaintiff has proposed a compromise by excluding any vacation and sick leave requests, documents related to family members (unless FMLA related), and 401k documents. (Filing No. 32-4, at CM/ECF p. 14). But irrelevant and highly personal information remains within the scope of the requests including, for example, employment applications, any documentation of pay increases or decreases, history of location transfers and prior addresses, any drug testing results, and any promotions, demotions, or performance improvement plans arising from matters other than alleged disability discrimination or FMLA issues.

While liberal discovery is afforded in employment discrimination lawsuits, discovery must nonetheless be limited to the practices at issue in the case. Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005). Plaintiff is alleging disability discrimination and violations of the FMLA. So, except as to records of education, training, and/or experience regarding ADA and FMLA compliance, and any commendations, employee complaints and Defendant's response, employee counseling, evaluations, or discipline imposed regarding the ADA and FMLA laws, the court knows of no documents potentially in the personnel files of Rucinski, Remmenga, and Strohmeyer that are relevant to this case. In other

17

words, I agree with Judge Nelson's prior ruling which narrowed nearly identical requests served in Bailey v. City of Bellevue, Nebraska, No. 4:18CV3132, 2020 WL 5664947, at *4 (D. Neb. Sept. 23, 2020), a case involving the same Plaintiff's counsel.

Despite Judge Nelson's ruling, Plaintiff's counsel again served requests for personnel files that were overbroad and requested personal and irrelevant information from nonparty employees. Even with Plaintiff's compromises, those requests remain overbroad; they still exceed what Judge Nelson permitted.

The undersigned magistrate judge will not re-draft Plaintiff's Requests 26, 27, and 28. The motion to compel as to these requests will be denied.

6)      Other allegations of disability discrimination and/or FMLA violations

Plaintiff requests documentation regarding all allegations of disability discrimination, retaliation, and/or failure to provide reasonable accommodation and/or violations of the FMLA, all investigations, findings, and conclusions reached, and all remedial and/or disciplinary action taken or imposed as to these allegations. The requests, as written, seek information for the time period of 2017 to 2020,[6] as to all employment applicants and all of Defendant's current or former employees within the Regions for which Strohmeyer provides HR management. (Filing No. 32-4, at CM/ECF pp. 8-9 (Requests for Production 17 and 18)). Defendant objects, stating the requests are "overly broad, irrelevant, unduly burdensome, harassing, and not proportional to the needs of the case." (Filing No. 32-4, at CM/ECF p. 9).

---

[6]      Plaintiff has agreed to limit the time period to 2018 to 2020.

Plaintiff's Requests for Production 17 and 18 seek comparator evidence. Comparator evidence is generally discoverable in employment discrimination cases, but the scope of that discovery is subject to limitations—particularly since the discovery requests typically seek the private information of nonparty co-employees. Any comparators should be assigned substantially similar job responsibilities to be performed during the same time frame as the alleged discrimination. Courts limit comparator discovery to employees from the local facility where the plaintiff was employed unless there is some showing that regional or nationwide discovery may be relevant. Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005). Courts also consider who made or contributed to the adverse employment decision that impacted the plaintiff, with that plaintiff's comparator discovery limited to employees who also worked for that decisionmaker. Brown v. W. Corp., 287 F.R.D. 494, 502 (D. Neb. 2012).

Defendant argues only Remmenga and Rucinski were involved in deciding whether to place Plaintiff on a PIP and later terminate him. It therefore argues Plaintiff's comparator discovery cannot extend beyond the employees in the District Rucinski supervised—the High Plains District. Defendant argues:

> Because the factual evidence demonstrates that Ms. Strohmeyer was not a decision maker in Plaintiff's claimed adverse employment actions, each of Plaintiff's requests seeking information or the production of documents for current or former employees who were/are provided Human Resources services by Ms. Strohmeyer is overbroad, irrelevant, and not proportional to the needs of the case.

(Filing No. 38, at CM/ECF p. 7).

Plaintiff argues he is entitled to comparator discovery for all employees in the regions under Strohmeyer's HR management because "Strohmeyer was highly involved with the issuance of the PIP and the termination. In some cases,

the HR person merely rubber stamps a decision, but it doesn't appear to be the case in this litigation." (Filing No. 32-9, at CM/ECF p. 4).

So, the initial issue before me is whether Strohmeyer was a decisionmaker as to placing Plaintiff on a PIP and his later termination, or whether she merely prepared or reviewed paperwork implementing decisions made by Rucinski and Remmenga. Plaintiff states Defendant's admissions prove Strohmeyer was a decisionmaker. Specifically, Plaintiff cites Defendant's NEOC submission, which states that on August 25, 2020, "Remmenga created [Plaintiff's] PIP in conjunction with his District Manager, Scott Rucinski and in consultation with Sunbelt Rentals' Human Resources Department, specifically the location's Human Resources Manager, Rebel Blake Strohmeyer." (Filing No. 32-6, at CM/ECF p. 3). Plaintiff further cites Defendant's NEOC statement that "[a]fter discussing the lack of progress with Mr. Rucinski and in consultation with Ms. Blake Strohmeyer, Mr. Remmenga terminated the Charging Party's employment on October 21, 2020, after. . . ." Id. at CM/ECF p. 4). Finally, in response to Interrogatory No. 4(a), Defendant stated "Tom Remmenga, Profit Center Manager, Scott Rucinski, District Manager, and Rebel Blake Strohmeyer, Territory Director of Human Resources, participated in the discussions regarding Plaintiff's performance, Sunbelt's decision to place Plaintiff on a Performance Improvement Plan, and its decision to terminate Plaintiff's employment." (Filing No. 32-2, at CM/ECF p. 5-6).

Strohmeyer has provided an affidavit in opposition to Plaintiff's motion to compel. The affidavit states that on August 24, 2020, Strohmeyer received an e-mail from Rucinski, copied to Remmenga, with an attached draft of a PIP to be presented to Plaintiff. The email asked Strohmeyer to "See if you feel this is appropriate." (Filing No. 37-1, at CM/ECF p. 6). Strohmeyer responded by email the same day, stating:

20

> I think it looks good. Just keep in mind, should he accept the plan, I will need an email with some specific notes regarding his progress as it relates to the plan for the record every two weeks or so. We are making a commitment to work with him and we need to ensure that is supported.

Filing No. 37-1, at CM/ECF p. 6. See also Filing No. 37-1, at CM/ECF p. 2. Strohmeyer states that as a human resources manager, her involvement was limited to ensuring that the PIP was facilitated in accordance with Sunbelt policies and procedures, and she did not make the decision to place Plaintiff on a PIP or participate in determining what goals should be included within Plaintiff's PIP. Filing No. 37-1, at CM/ECF p. 3. 12.

The affidavit further explains that Remmenga sent an email to Strohmeyer on October 19, 2020, stating that, "Per discussions with Scott [Rucinski] last Friday it was decided it is time to part ways with John [Hartman]. Because of scheduling conflicts we are planning on Wednesday this week to meet with him." (Filing No. 37-1, at CM/ECF p. 11). Rucinski was copied on the e-mail. Strohmeyer responded by e-mail on the same day, stating, "For the record, please send me the latest update on his performance. I've attached a draft of John's Separation Notice dated for Wednesday. Please let me know if there are any changes to be made." (Filing No. 37-1, at CM/ECF p. 11). Strohmeyer states she "did not make the decision to terminate Mr. Hartman's employment." (Filing No. 37-1, at CM/ECF p. 3).

Plaintiff characterizes Strohmeyer affidavit as an attempt to "walk back" its prior position on the extent of Strohmeyer's involvement in deciding Plaintiff's fate because Defendant is now "dissatisfied with its admissions and wants to change course." (Filing No. 42, at CM/ECF p. 13).

Contrary to Plaintiff's argument, Strohmeyer's current affidavit is not inconsistent with Defendant's prior statements. Strohmeyer's affidavit states Strohmeyer provided "consultation" regarding whether the content of Plaintiff's PIP was consistent with Sunbelt's policies, and it was Remmenga and Rucinski who decided to place Plaintiff on a PIP and drafted the document, including the goals within it. These statements are fully supported by the emails attached to the affidavit. Strohmeyer's affidavit and the attached emails also establish that Remmenga and Rucinski decided to terminate Plaintiff and then notified Strohmeyer of that decision, with Strohmeyer's "consultation" and "participation" limited to drafting the Separation Notice and requesting updated documentation on Plaintiff's performance.

Strohmeyer was not a decisionmaker in placing Plaintiff on a PIP and terminating his employment. The decisionmakers were Remmenga and Rucinski. As to these supervisors, the relevant comparators are limited to the employees they supervised which extends, at most, to employees within the High Plains District. Defendant offered to identify whether any complaints of disability discrimination, retaliation, failure to accommodate, or violations of FMLA were made by outside sales representatives in that District during the time period of 2018 through 2020. Plaintiff rejected that offer. (Filing No. 32-9, at CM/ECF p. 5).

The court could rule that Defendant's objections to Requests for Production 17 and 18 are sustained, and Plaintiff is not entitled to any response to these requests. But in this case, had Defendant fully responded to Interrogatory No. 4(b), the information within Strohmeyer's affidavit would have been available to Plaintiff before a motion to compel was filed—and before he rejected Defendant's offer. So, under the circumstances, the court will order Defendant to identify any complaints of disability discrimination, retaliation, failure to accommodate, or violations of FMLA made by outside sales representatives in

the High Plains District during the time period of 2018 through 2020, and to produce all documentation referencing or explaining those facts.

### 7)    Comparator information

Plaintiff's discovery requests, as written, seek the name of all of Defendant's outside sales personnel from 2017 to present within Strohmeyer's area of HR management and as to each such employee, the dates of employment, disability status, any request for ADA accommodation and/or FMLA leave, sales territory, performance, commissions and/or bonuses paid, and a full description of all verbal and/or written disciplinary action issued. Plaintiff also requests each such employee's personnel files and other documents directly related to his or her performance, including, but not limited to evaluations, disciplinary and/or corrective action, documents, maps, and other items which reflect changes in his or her sales territory, the employee's complete customer lists, all goals assigned by Defendant and the employee's performance toward that goal, an itemization of all commissions and bonuses paid to the employee, and an explanation of why the payment was made and how it was calculated, and the employee's disability status, requests for ADA accommodation, FMLA paperwork and requests for leave, Defendant's response to those requests, and if applicable, the reason the employee was terminated. ((Filing No. 32-2, at CM/ECF pp. 10-11 (Plaintiff's Interrogatory Nos. 7-8), (Filing No. 32-4, at CM/ECF pp. 10-12, 19-20, Requests for Production 19-23, 37)).

Plaintiff now limits the requests to:

2018 to present time frame. Limited to: assigned territory, suggested arears that OSR work outside assigned territory, goals & assignments, performance towards goals/assignments, performance-based commissions & bonuses paid, methods used to calculate paid commissions & bonuses, evaluations, verbal & written

> counseling, discipline, discharge, resignation documents, disability, reasonable accommodation and FMLA requests and Defendant's responses.

(Filing No. 32-4, at CM/ECF p. 10). In other words, Plaintiff has limited the time frame and is no longer requesting the customer lists or personnel files of each employee.

Defendant argues Plaintiff's requests are overbroad, unduly burdensome, and irrelevant. For the reasons previously discussed, comparator discovery will be limited to the approximately fifteen Outside Sales Representatives who worked in the High Plains District during the time period of 2018 through 2020 timeframe. (Filing No. 37-1, at CM/ECF p. 2). Comparator discovery beyond those parameters is overly broad and unduly burdensome. The court also agrees that requesting the entire personnel file for each employee was overbroad and included irrelevant information. But Plaintiff is no longer requesting the entire personnel file, nor is he requesting the customer lists. Plaintiff's compromised position, if limited to the High Plains District for the 2018-2020 time period, is not unduly burdensome and the requested information is relevant to assessing Plaintiff's allegations that he was not placed on a PIP and terminated due to performance issues; that the Defendant's claim of performance issues was a mere pretext for disability discrimination.

As limited to the Outside Sales Representatives who worked in the High Plains District during the time period of 2018 through 2020, Defendant must fully respond to Interrogatories 7 and 8. As to Requests for Production 19-23, and 37, for each employee named in response to Interrogatory No. 7, Defendant shall produce documentation of the employee's assigned territory; suggested areas for working outside that territory; goals, assignments, and performance towards those benchmarks; performance-based commissions and bonuses paid, and how

those amounts were calculated; evaluations, verbal and written counseling, or discipline; discharge or resignation documents; and any disability, disability accommodations or requested accommodations, and Defendant's response; and any FMLA requests and Defendant's response.

B. Sanctions

Plaintiff requests sanctions, stating that "[d]ue to Defendant's unjustified failure to answer discovery, Plaintiff requests an award of attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5)(A) and requests leave to submit an accounting of hours worked in prosecuting the instant motion to compel." (Filing No. 42, at CM/ECF p. 17). The court agrees that Defendant's effort toward answering some of Plaintiff's written discovery was minimal, at best, and insufficient. But many of Plaintiff's discovery requests, as served, were overbroad. Neither party can declare a victory on this motion to compel.

With some exceptions, Defendant's objections and refusal to respond or fully respond to the discovery served was substantially justified. Plaintiff's request for attorney fees will be denied.

Accordingly,

IT IS ORDERED:

A.    Plaintiff's motion to compel, (Filing No. 33) is granted, in part, and denied, in part as follows:

1)    As to Interrogatory No. 1, Defendant must identify by name, and if known, address and phone number, any person who, to Defendant's

knowledge, has information relevant to the allegations within the operative Complaint and Answer. As to each such person, Defendant must disclose a general and/or topical description of what that person knows.

2) Defendant shall fully respond to Interrogatory No. 3

3) To the extent described in this order, Defendant shall provide full and complete responses to Interrogatories 4(b-d), 5, and 6.

4) As to Interrogatory No. 9 and Requests for Production 24 and 25, subject to the protective order entered in this case, Defendant shall fully respond to Interrogatory No. 9, and as to each person identified in response to that interrogatory, shall produce documentation of the employee's assigned territory; suggested areas for working outside that territory; goals, assignments, and performance towards those benchmarks; performance-based commissions and bonuses paid, and how those amounts were calculated; evaluations, verbal and written counseling, or discipline; discharge or resignation documents; and any disability reported, any disability accommodations or requested accommodations, and Defendant's response; and any FMLA requests and Defendant's response.

5) Plaintiff's motion to compel responses to Requests for Production 26, 27, and 28 is denied.

6) As to Requests for Production 17 and 18, subject to the protective order entered in this case, Defendant must disclose any complaints of disability discrimination, retaliation, failure to accommodate, or violations of FMLA made by outside sales representatives employed in the High Plains District during the time period of 2018 through 2020, and produce all documentation of this information.

7)   Regarding Interrogatories 7 and 8, and Requests for Production 19 through 23, and 37, subject to the protective order entered in this case:

a.  As limited to the Outside Sales Representatives who worked in the High Plains District during the time period of 2018 through 2020, Defendant must fully respond to Interrogatories 7 and 8.

b.  As to Requests for Production 19-23, and 37, for each employee named in response to Interrogatory No. 7, Defendant shall produce documentation of the employee's assigned territory; suggested areas for working outside that territory; goals, assignments, and performance towards those benchmarks; performance-based commissions and bonuses paid, and how those amounts were calculated; evaluations, verbal and written counseling, or discipline; discharge or resignation documents; and any disability reported, any disability accommodations or requested accommodations, and Defendant's response; and any FMLA requests and Defendant's response.

B.   The discovery responses ordered in Paragraph A of this order shall be served on or before December 30, 2022.

C.   Plaintiff's requests for sanctions is denied.

D.   This case is no longer stayed. As to all unexpired case progression dates, on or before December 20, 2022, the parties shall submit proposed dates for entering a new case progression schedule.

November 28, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

27